# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES** : | |
| : | 3:16-CR-206 |
| v. : | |
| : | (JUDGE MANNION) |
| **MARIO VALENTINE,** : | |
| **Defendant** : | |

# MEMORANDUM

## I.  BACKGROUND

On September 2, 2020, defendant Mario Valentine, an inmate confined at the United States Penitentiary ("USP") at Lewisburg, in Lewisburg, Pennsylvania, who is serving an aggregate 64-month federal sentence, (*see* April 16, 2019 Judgment, Doc. 110), filed, *pro se*, a Motion for Compassionate Release, under 18 U.S.C. §3582(c)(1)(A), due to the COVID-19 pandemic and his underlying medical condition, namely, sleep apnea. (Doc. 126). Valentine alleges that his severe sleep apnea makes him particularly vulnerable to becoming seriously ill if he contracts COVID-19. Valentine requests the court to allow him to serve the remainder of his prison sentence on home confinement. Valentine, age 37, states that he has no history of violence and that if he is released from prison to home confinement he will reside in Shenandoah, Pennsylvania.

1

Valentine's projected release date from prison is March 2, 2024. *See* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results.

Valentine states that he submitted a request for compassionate release to the warden at USP Lewisburg on August 13, 2020. Valentine states that the warden denied his request on August 20, 2020, and that he is not aware of the warden granting any such requests. Valentine attached a copy of a BOP response to his inmate request verifying that he submitted a request and the warden denied his request on the dates he indicated. He also contends that many courts no longer require an inmate to exhaust his BOP administrative remedies before fling a motion for compassionate release with the court due to the pandemic.

Valentine alleges that the COVID-19 virus is present in the prison and that it is not possible to comply with the CDC safety protocols to prevent the spread of the virus in the prison. He also alleges that the prison is not taking adequate measures to protect inmates from the virus. Thus, Valentine states that he is entitled to release from prison due to unforeseen circumstances at the time of his sentence caused by the pandemic and the "ill prepared approach" of the BOP in response to the pandemic.

On September 2, 2020, the court directed the government to respond to defendant's motion by September 16, 2020. (Doc. 127). The government timely filed its response, (Doc. 128), with attached Exhibits, (Docs. 128-1 & 128-2), including a copy of the warden's August 20, 2020 response and a copy of Valentine's August 13, 2020 request for compassionate release due

2

to the COVID-19 pandemic. The warden explained that Valentine did not meet the BOP's criteria for compassionate release. The government also filed copies of Valentine's BOP medical records, which the court allowed to be filed under seal. (Doc. 130).

On September 29, 2020, Valentine filed his reply brief. (Doc. 132). In his reply brief, Valentine alleges that at the time he filed his motion there were 49 positive cases of COVID-19 at the prison and that this number has now doubled among inmates and staff which shows that the prison is not taking sufficient steps to protect inmates.[1]

Valentine also acknowledged that under 18 U.S.C. §3582(c)(1)(A) he must first make a request for compassionate release to the warden and then give him 30 days to respond. Valentine recognizes that he filed his instant motion before 30 days expired from the date that the warden received his request. Nonetheless, Valentine argues that the exhaustion requirement is

---

[1] The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. According to the BOP's website as of October 21, 2020, there were four current positive cases of COVID-19 among inmates and one positive case among staff at USP Lewisburg and, and 83 inmates and 12 staff members had recovered from the virus.

Since the safety procedures and protocols enacted by the BOP in prisons to protect inmates and staff are found in the BOP's websites, they are not repeated herein. *See also* BOP website at: www.bop.gov/coronavirus/index.jsp. Also, the government attached to its response, (Doc. 128-1), the BOP's Phase Nine COVID-19 Action Plan and states in its brief the safety protocols implemented at USP Lewisburg, in addition to other CDC guidelines followed nationwide by the BOP. (Doc. 128 at 2-6).

3

"not absolute", and that the court can waive it when it would be "futile" and when it would subject the movant to "undue prejudice." Valentine also contends that courts are no longer requiring inmates to comply with the exhaustion requirement of §3582(c)(1)(A).

For the reasons set forth below, Valentine's motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), will be dismissed without prejudice for lack of jurisdiction due to his admitted failure to comply with the exhaustion requirement under §3582(c)(1)(A)(i), since he filed his present motion before 30 days had lapsed after he submitted his request to the warden.[2]

---

[2] To the extent Valentine, who is proceeding *pro se*, is liberally construed as also seeking home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, due to his reference to the Act in his reply brief, (*see* Doc. 132), the court does not have authority to grant his request for relief and order the BOP to release him to home confinement. See United States v. McCann, 2020 WL 1901089, *3 (E.D. Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted). *See also* United States v. Logan, 2020 WL 2559955, *2 (W.D. N.C. May 20, 2020) ("The Defendant alternatively moves the Court to order his release to home confinement due to the ongoing COVID-19 pandemic. This request, however, must also be denied. The discretion to release a prisoner to home confinement lies solely with the Attorney General."). Further, after a defendant is sentenced to imprisonment by the court, the BOP is solely responsible for determining the defendant's place of incarceration. *See* 18 U.S.C. §3621(b); 18 U.S.C. §3624(c). *See also* United States v. Delacruz, 2020 WL 3405723, *4 (M.D. Pa. June 19, 2020) ("[T]he Court is without authority to control the BOP's placement of

## II.   DISCUSSION[3]

The court will first consider the exhaustion issue since "18 U.S.C. §3582 (c)(1)(A) contains a threshold exhaustion requirement." United States v. Schultz, 454 F.Supp.3d 217, 220 (W.D. N.Y. April 15, 2020). *See also* United States v. Gadsden, 2020 WL 3871083, *1 (W.D. Pa. July 9, 2020) ("In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), the court of appeals held that district courts cannot consider requests for compassionate release under the First Step Act until a prisoner has exhausted his administrative remedies.").

In its opposition brief, (Doc. 128 at 10-11), the government states that Valentine's motion should be dismissed without prejudice "because he has failed to meet the jurisdictional requirements of §3582(c)(1)(A)."

The government states that the court lacks authority to act on Valentine's motion at this time. It points out that "Section 3582(c) provides that a defendant's compassionate-release motion cannot be entertained by

---

Defendant—the Court can neither directly assign Defendant to home confinement nor direct the BOP to do so.").

[3]Valentine pled guilty on August 31, 2018, to one count of conspiring to commit money laundering, in violation of 18 U.S.C. §1956(h), and one count of aggravated identity theft, in violation of 18 U.S.C. §1028A. On April 4, 2019, the court sentenced Valentine to an aggregate 64 months of imprisonment, followed by three years of supervised release, and $269,575.35 in restitution. (Doc. 110).

Since the underlying facts of Valentine's arrest and conviction in this case are summarized in the government's brief, (Doc. 128 at 2), they are not repeated herein.

5

a court until 'the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .'" (Doc. 128 at 10). The government also states that "[t]his exhaustion requirement is mandatory and must be enforced by the Court." (Id. at 11) (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. Apr. 2, 2020) ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance.")). Further, it contends that "[a]s confirmed by the Court of Appeals, where 30 days have not passed following presentation of a request to a warden, the statute 'presents a glaring roadblock foreclosing compassionate release.'" (Id.) (citing at Raia, 954 F.3d at 597).

> Specifically, the government states, (Id. at 11-12), that:
>
> Although Valentine, …, presented a request to the warden and the warden denied that request within 30 days, Valentine sought relief in this court before 30 days elapsed from the receipt of his request by the warden. Specifically, Valentine's request was received by the warden on August 13, 2020, and he filed a motion with this Court dated August 31, 2020 and received on September 2, 2020. Thus, his options are to either exercise the administrative appeal process, or to re-file a motion seeking relief with this Court, now that 30 days has elapsed since August 13, 2020. The Court has no jurisdiction entertain this motion, as it was filed prior to that 30-day mark, under the plain language of the statute.

6

In fact, the warden advised Valentine in his response that he could appeal the denial of his request to the BOP Regional Director within 20 days of his response. (Doc. 128-2).

Thus, as the government points out, Valentine's motion for compassionate release is subject to dismissal since he filed it before 30 days passed from the receipt of his request by the warden.

No doubt that the court must "confirm that exhaustion is satisfied because [the Third] Circuit has held that §3582(c)(1)(A)'s exhaustion requirement is mandatory." United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020) (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (mandating "strict compliance" with §3582(c)(1)(A)'s exhaustion requirement)). "The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." Schultz, 454 F.Supp.3d at 220 (citation omitted). "A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." *Id.* (citations omitted).

"Prior to petitioning a court for relief under §3582(c), a defendant must first file an administrative request for compassionate release with the warden of their facility and then either: (1) fully exhaust BOP's administrative remedies; or (2) wait thirty (30) days from the date their administrative

request was filed with the warden." United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020). Thus, "[a] prisoner may file a motion for compassionate release with the sentencing court 'after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**.'" United States v. Harris, 973 F.3d 170 (3d Cir. 2020) (citing 18 U.S.C. §3582(c)(1)(A) (emphasis original). Further, "the [compassionate release] statute states that the defendant may file the motion thirty days after the warden receives his request." Id. (citing United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) ("But before they [file a compassionate-release motion], defendants must at least ask the Bureau of Prisons (BOP) to do so on their behalf and give BOP thirty days to respond.")).

Although Valentine correctly indicates that he submitted a request for compassionate release to the warden at USP Lewisburg, which was received on August 13, 2020, he admitted that he did not wait 30 days to file his motion after the warden received his request. No doubt that August 13, 2020 marks the beginning date for the 30-day exhaustion requirement. Specifically, Valentine was required to wait until September 12, 2020 to file his motion with the court. Thus, Valentine has failed to meet his burden of establishing the procedural prerequisites for judicial review by showing that he has satisfied 30-day requirement contained in §3582(c)(1)(A).

Moreover, similar to an inmate who files a civil rights action must first exhaust his administrative remedies with the prison before filing his action in federal court, pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. §1997e, and cannot complete the exhaustion process while his action is pending in the court, *see* Banks v. Roberts, 251 Fed.Appx. 774, 775-76 (3d Cir. 2007) (Third Circuit held that an inmate who filed his civil rights complaint in federal court before he completed the BOP administrative remedy appeal process failed to comply with PLRA mandatory exhaustion requirement, and that "[a] prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies after initiating suit in federal court), the court finds that a defendant filing a motion for compassionate release under §3582(c)(1)(A) cannot wait out the 30-day period after he presents his request to the Warden while his motion is pending in the court. *See* Raia, *supra*. "Rather, a defendant must wait 30 days after he submits his request to the Warden before he files his motion for compassionate release with the court." United States v. Rodriguez, 2020 WL 6047564, *4 (M.D. Pa. Oct. 13, 2020).

As such, Valentine did not wait for 30 days after he submitted his request to the warden before he filed his instant motion, which is statutorily required, and his motion will be dismissed without prejudice for his failure to comply with the exhaustion requirement under §3582(c)(1)(A). *See* United States v. Bogdanoff, 459 F.Supp.3d 653 (E.D. Pa. May 8, 2020).

Moreover, the court cannot waive the exhaustion requirement under §3582(c)(1)(A) and there is no futility exception that the court can apply. "This argument has been rejected by courts within this Circuit, who have found that there is no authority to carve out [a futility] exception to a statutorily-mandated exhaustion requirement." Bogdanoff, 459 F.Supp.3d 653, ---. As the court in Bogdanoff, *id*., explained:

> When Congress enacts a statutory exhaustion provision, "courts have a role in creating exceptions only if Congress wants them to." Ross v. Blake, ––– U.S. –––, 136 S. Ct. 1850, 1857, 195 L.Ed.2d 117 (2016). "For that reason, mandatory exhaustion statutes ... establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id*. Thus, even if [defendant's] suggested futility exception to the exhaustion requirement of 18 U.S.C. §3582 were appropriate, I lack authority to apply such an exception.

Secondly, the court cannot yet determine if Valentine has demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence since he has not complied with the exhaustion requirement. *See id*. at ---. *See also* United States v. Zukerman, 451 F.Supp.3d 329, 332 (S.D. N.Y. 2020) ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence."); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)).

The Third Circuit in Raia, *id.*, also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also* United States v. Feiling, 453 F.Supp.3d 832, 837 (E.D. Va. 2020) ("the Court agree[d] with the Third Circuit [in Raia] and the district courts cited [in its decision] and will join them in holding that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement).

### III.  CONCLUSION

Defendant Valentine's Motion for Compassionate Release and for Release to Home Confinement related to the COVID-19 pandemic, **(Doc.**

**126)**, will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction under §3582(c)(1)(A)(i) since he filed his motion before 30 days had lapsed from the time he submitted his request to the warden. Further, insofar as Valentine is seeking this court to compel the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

        s/ *Malachy E. Mannion*
        **MALACHY E. MANNION**
        **United States District Judge**

**Dated: October 30, 2020**
16-206-01